UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNION SECURITY LIFE INSURANCE
COMPANY OF NEW YORK,

                             Plaintiff,                        1:10-CV-00369 (LEK/RFT)

                -against-

JJG-1994, a minor; JJG-2002, a minor,

                             Defendants.

_____

## MEMORANDUM-DECISION and ORDER

Presently before the Court is Defendant JJG-2002 ("JJG-2002")'s Motion for summary judgment against Defendant JJG-1994 ("JJG-1994"), filed September 22, 2010 in the interpleader action begun on March 30, 2010.  Dkt. No. 13 ("Mot. for S. J.").  Plaintiff Union Security Life Insurance Company of New York ("Plaintiff") filed the Complaint for interpleader relief after Defendants, who are both sons of the deceased, each filed competing claims for their father's life insurance benefits.  Dkt. No. 1 at 3-4. ("Compl.")  In the Motion, JJG-2002 claims that because JJG-1994 pled guilty to killing their father, he is precluded from receiving the life insurance benefits under the New York slayer rule.  Affirmation in support of Motion for summary judgment ("Aff'n in Supp. of Mot.") (Dkt. No. 13-1) at 3.  The Court acknowledges the efforts of the *pro bono* counsel, Lisa A. Proskin and Gerald J. Jennings, in briefing the Court on the issues in this case.  For the reasons stated below, JJG-2002's motion for summary judgment is granted.

## I.  BACKGROUND

On January 24, 2008, Decedent was shot and killed in his home in New York.  Plaintiff's

Certification in support of Motion for interpleader relief ("Pl. Cert'n in Supp. of Interpld. Mot.") (Dkt. No. 7-2) , Ex. 2.  His older son, JJG-1994, was charged as an adult with second degree murder, and subsequently pled guilty to first degree manslaughter for the killing.  Affirmation in opposition to Motion for summary judgment.  Id., Ex. 6 at 2.  At the time of the shooting, JJG-1994 was found to be acting under extreme emotional disturbance, but not out of self-defense. Id., Ex. 7.  As part of the plea, JJG-1994 admitted to firing the shotgun at Decedent's head while he was lying on the couch.  Id., Ex. 7.  His case was handled in Family Court; he is currently at a secure juvenile detention facility.  Id., Ex. 8 at 1.

Decedent was a participant in his employer's Employee Retirement Income Security Act-regulated ("ERISA") group life insurance plan (the "Plan").  Id. ¶ 2.  At the time of his death, Decedent's sole beneficiary was JJG-1994, based on a beneficiary form dated September 7, 2006. Id., Ex. 3.  Because of the nature of his death, Decedent's beneficiary is entitled to ten thousand dollars in life insurance, as well as an additional ten thousand dollars in accidental death benefits. Id., Ex. 1 at 6.  Subsequent to his death, two claims for Decedent's benefits were filed on JJG-1994's behalf and one claim was filed on behalf of JJG-2002.  Id., Exs. 4, 5.  Believing JJG-1994 to be ineligible to receive the benefits under New York's common law slayer rule, Plaintiff was unsure of how to proceed and filed the present Complaint for interpleader relief.  Compl. at 4.

In the Complaint, Plaintiff sought permission to pay the benefits plus interest into the Court's registry for disbursement upon judgment, to be dismissed from the action and discharged of liability, and an award of costs and attorney's fees.  Compl. at 5.  Plaintiff also requested that Defendants be appointed with guardians, enjoined from suing for the benefits, and required to settle their claims or alternatively, that the Court settle their claims.  Compl. at 4-5.  On July 9

2010, the Court granted Plaintiff's motion, with one exception—an award of costs and attorney's fees was denied.  Order re Motion for interpleader relief ("Order on Interpld. Mot.") (Dkt. No. 8). The Motion was later amended to reflect the inclusion of Decedent's accidental death benefits in the amount paid into the Court's registry.  Mot. Req. Am. Order; Amended order re Motion for interpleader relief ("Am. Order on Interpld. Mot.") (Dkt. No. 11).

Once Plaintiff was dismissed from the action, Defendants were appointed *pro bono* counsel.  Order appointing *pro bono* counsel ("Order Appointing Counsel") (Dkt. No. 12).  On September 22, 2010, JJG-2002 filed this Motion, seeking summary judgment.  Mot. for S. J.

## II. DISCUSSION

### A.  Standard of Review

A court may grant summary judgment where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  For a motion to succeed, the moving party is required to present the basis for its motion and identify the evidence it believes demonstrates that no material dispute exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists where there is enough evidence that a reasonable jury could find for the nonmoving party; if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248-50 (1986) (citations omitted).

On summary judgment, the court is not weighing the evidence, but determining the need for a trial.  Id. at 250.  Any inferences the court draws must be "viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  To establish the existence of a dispute, the nonmovant must show specific facts that

3

constitute a genuine issue for trial; mere "metaphysical doubt" as to the facts is insufficient. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to establish the existence of "an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex, 477 U.S. at 322.

**B.  New York's Slayer Rule Preempts ERISA**

Plaintiff filed this claim in federal district court because the life insurance policy at issue is regulated by ERISA.  However, JJG-2002 contends that the New York common law rule prohibiting a killer from profiting from his crime applies here, and is not preempted by ERISA. Memorandum in support of Motion for summary judgment ("Mem. in Supp. of S. J.") (Dkt. No. 13-2) at 5-6.  This assertion is supported by the Second Circuit, which distinguished laws that are not preempted by ERISA as those "of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA is incidental."  Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146 (2d Cir. 1989).  In Mendez-Bellido, an Eastern District Court found that the New York slayer rule is not preempted by ERISA.  Mendez-Bellido v. Bd. of Trs. of Div. 1181, A.T.U. N.Y. Employees Pension Fund and Plan, 709 F.Supp. 329, 331 (E.D.N.Y. 1989). The reasoning in Mendez-Bellido is persuasive and falls within the Second Circuit guidelines; therefore, the Court concludes that the application of New York's slayer rule here is not preempted by ERISA.

**C.  Application of New York's Slayer Rule**

New York common law holds that "one cannot take property by inheritance or will from an ancestor or benefactor whom he has murdered."  Riggs v. Palmer, 115 N.Y. 506, 513 (1889);

see also In re Estates of Covert, 97 N.Y.2d 68, 74 (N.Y. 2001); In re Wright, 859 N.Y.S.2d 864,

866 (Sur. Ct., Westchester County 2008).  The slayer rule is based on the fundamental maxim

that no one shall be permitted to profit by his own crime.  See Riggs, 115 N.Y. at 511.  It applies

even if the crime was committed without the intent to acquire the victim's property or even to

cause the victim's death.  See In re Estate of Alexis, 14 Misc.3d 379, 381 (Sur. Ct., Nassau

County 2006).  Although the court in Matter of Wolf decided in equity to allow a man to inherit

from his wife when he killed her while intending to kill another,  no court has made a similar

departure from the slayer rule, which has consistently been applied to those guilty of

manslaughter.  See Matter of Wolf, 88 Misc. 433, 442 (Sur. Ct., New York County 1914); but

see Matter of Bach, 53 A.D.2d 612, 612 (N.Y. App. Div. 1976) (first degree manslaughter);

Mark G. v. Sabol, 180 Misc. 2d 855, 859-60 (N.Y. Sup. Ct., New York County 1999) (first

degree manslaughter); Matter of Drewes, 206 Misc. 940, 941 (Sur. Ct., Erie County 1954)

(second degree manslaughter); and Matter of Sparks, 172 Misc. 642, 645-46 (Sur. Ct., New York

County 1939) (first degree manslaughter).

JJG-1994 pled guilty to first degree manslaughter for his father's death.  Pl. Cert'n in

Supp. of Interpld. Mot., Ex. 6 at 2.  Under New York law, he is collaterally estopped from

disclaiming his guilt in this proceeding because "[a] criminal conviction, whether by plea or after

trial, is conclusive proof of the same facts in a subsequent civil proceeding."  Matter of Estate of

Savage, 175 Misc.2d 880, 882 (Sur. Ct., Rockland County 1998); see also Grayes v. DiStasio,

166 A.D.2d 261, 262-63 (N.Y. App. Div. 1990).  In any case, JJG-1994 does not argue that the

slayer rule does not apply to manslaughter convictions.  Affirmation in opposition to Motion for

summary judgment ("Aff'n in Opp'n to Mot.") (Dkt. No. 15) at 3-4.

Courts have long applied the slayer rule to prevent killers from receiving their victims' life insurance benefits.  See Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 600 (1886) ("It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken.").  The principle is also well-established in New York law.  See John Hancock Life Ins. Co. v. Perchikov, No. 04 CV 98, 2010 WL 185007, *2 (E.D.N.Y. Jan. 15, 2010) ("Under New York law, a life insurance beneficiary who kills the insured is disqualified from collecting the insured's life insurance proceeds."); In re Loud's Estate, 70 Misc. 2d 1026, 1027 (Sur. Ct., Kings County 1972) (finding that the application of the slayer rule is "the same whether we consider the right to inherit or the right to collect the proceeds of insurance . . . [p]ublic policy in this state denies benefits in both instances.").  This issue is not contested by JJG-1994.  Aff'n in Opp'n to Mot. at 3-4.

The only exception to New York's slayer rule applies where the killer did not know at the time the nature and quality of his act.  See Matter of Eckardt, 184 Misc. 748, 755 (Sur. Ct., Orange County 1945).  Most often, this involves cases of insanity, self-defense, or accident.  See Matter of Fitzsimmons, 64 Misc. 2d 622, 624 (Sur. Ct., Erie County 1970) (insanity); Matter of Lupka, 56 Misc. 2d 677, 680 (Sur. Ct., Broome County 1968) (insanity); Mahar v. Metropolitan Life Ins. Co., 260 A.D. 961, 961 (N.Y. App. Div. 1940) (self-defense); Commercial Travelers Mut. Accident Ass'n v. Witte, 406 S.W.2d 145, 146-49 (Ky. Ct. App. 1966) (applying New York law in involuntary manslaughter).  In one unusual case, a wife who killed her husband while in a somnambulistic state was allowed to inherit.  See Eckardt, 184 Misc. at 755 (finding that because she did not know the nature and quality of her act at the time, she had committed no legal wrong).

JJG-1994 argues that his age and state of extreme emotional disturbance at the time of the killing are factors that, when taken into consideration, should allow him to receive his father's life insurance benefits.  Aff'n in Opp'n to Mot. at 3.  When considering a conviction for first degree manslaughter, the court in Matter of Grey v. Levitt, 76 Misc.2d 720, 721 (N.Y. Sup. Ct., Albany County 1974), explained that emotional disturbance merely lessens the degree of crime; it  "neither excuses nor absolves the culpability of the offender . . . nor does such element render the killing unintentional or accidental.  Accordingly, such conviction precludes inheritance or any profiting from such wrong."  Ultimately, because emotional disturbance does not impair one's ability to understand the nature and quality of an act, it cannot fall under the exception to the slayer rule.

As long as the defendant meets the age requirement for the substantive offense, courts have refused to mitigate the slayer rule because the offender was adjudicated as a juvenile defendant.  In the seminal Riggs case, the defendant was sixteen when he killed his grandfather and was subsequently denied any inheritance.  See Riggs, 115 N.Y. at 508, 519.  Similarly, the court in Matter of Sengillo, 206 Misc. 751, 751-53 (Sur. Ct., Wayne County 1954), denied a fifteen-year-old adjudicated as a juvenile delinquent the right to inherit after killing his father. Although JJG-1994, at age 13,  was younger than the defendants in either of those cases at the time of his father's death, there is no case law supporting his request for an exception, either in New York or other states.  See Lofton v. Lofton, 26 N.C. App. 203, 205-10 (N.C. Ct. App. 1975) (finding a thirteen-year-old adjudicated as a juvenile delinquent could not inherit after killing his parents); In re Estates of Josephson, 297 N.W.2d 444, 449 (N.D. 1980) (finding a thirteen-year-old adjudicated as a juvenile delinquent could not inherit after killing his parents); Bosley v.

7

Hawkins, 24 Ohio Misc. 2d 11, 12-13, 18 (Ct. Com. Pl. of Ohio, Lorain County 1985) (finding a

fourteen-year old adjudicated as a juvenile delinquent could not inherit after helping her older,

minor sister kill their father).

JJG-1994 pled guilty to manslaughter, which disqualifies him as Decedent's life

insurance beneficiary.  He urges that because the slayer rule is not codified, the Court should not

apply the law in consideration of his age and emotional disturbance.  As the court in Riggs noted,

the lack of a statute is not a case of omission, but simply unnecessary because the maxims of the

common law are sufficient here.  115 N.Y. at 513.  As addressed above, because neither JJG-

1994's age nor his emotional state fall under the exception to the slayer rule, the Court finds

there are no genuine issues of material fact for a jury to decide, and that JJG-2002 is entitled to

judgment as a matter of law.

### D.  Subsequent Beneficiary

Where a beneficiary is disqualified from life insurance benefits under the slayer rule, he is

treated by the law as having predeceased the decedent.  See Matter of Macaro, 182 Misc.2d 625,

631 (Sur. Ct., Westchester County 1999).  JJG-1994 asserts that if he is considered to have

predeceased Decedent, his heirs should receive the life insurance benefits, because no contingent

beneficiary was named in the Plan.  Aff'n in Opp'n to Mot. at 4.  However, New York law

forbids the proceeds of a crime to pass to a killer's heirs or devisees.  See Bierbrauer v. Moran,

244 A.D. 87, 90 (N.Y. App. Div. 1935) (where a husband killed his wife, property they held as

joint tenants could not be inherited by his devisee); Petrie v. Chase Manhattan Bank, 38 A.D.2d

206, 209 (N.Y. App. Div. 1972) (finding property cannot pass through a murderer's estate to his

heirs or devisees).  Decedent's Plan dictates that if no beneficiary is living when he dies, then his

benefits will be paid to his surviving children if he has no surviving spouse.  Pl. Cert'n in Supp.

of Interpld. Mot., Ex. 1 at 16.  Decedent was unmarried at the time of his death; therefore, the

Court finds that JJG-2002 should receive his life insurance benefits in their entirety.


## III.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant JJG-2002's Motion for summary judgment (Dkt. No. 13) is

**GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court shall pay, from the Registry, the balance of the

interest-bearing account representing the benefits due under the Plan to Defendant JJG-2002; and

it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on all parties.

**IT IS SO ORDERED**.


DATED:       August 24, 2011
             Albany, New York


Lawrence E. Kahn
U.S. District Judge